

# NUMBER 13-14-00199-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

ANDY TORRES RAMOS,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.

---

### On appeal from the 36th District Court
### of San Patricio County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Garza

Appellant, Andy Torres Ramos, was convicted of aggravated assault, a second-degree felony, and was sentenced to three years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through Ch. 46, 2015 R.S.). The prison sentence was suspended and Ramos was placed on community supervision for three years. By one issue on appeal, he contends the evidence was insufficient to support his conviction. We

affirm.

## I. BACKGROUND

Jay Hinojosa testified that he was a San Patricio County Sheriff's deputy on July 14, 2013. On that date, he was dispatched to a call reporting a vehicle assault on County Road 61 near Sinton. When he arrived, the complainant, Victoria Martinez, appeared injured and in pain. Hinojosa took photographs of Martinez's injuries. The photographs, which were entered into evidence, depict minor bruises and abrasions to Martinez's hand, leg, neck, and torso. Martinez was taken to a hospital and was treated and released the same day.

On cross-examination, in response to a question by defense counsel, Hinojosa stated that Martinez reported that a car "[r]an over the lower portion of her body." He agreed with defense counsel that Martinez said "that the tire was on her back as he drove away." He did not, however, take photographs of Martinez's back.

Hinojosa testified that he was later provided with Martinez's purse, which was recovered from the car that allegedly ran over her. The purse contained, among other things, what Hinojosa believed to be hydrocodone pills. Hinojosa stated that, according to Martinez, the pills belonged to her and were for "an old prescription," but he did not arrest Martinez because "[t]he purse wasn't in her possession, the pills were not in her possession at the time." Hinojosa conceded that a person could possibly become "intoxicated" by using hydrocodone.

Martinez testified that she and Ramos were in a relationship but that they broke up in April. Ramos texted her that he missed her, so she agreed that he could pick her up in his white Ford Mustang and take her to Corpus Christi. They then returned to Sinton.

2

Martinez testified:

> I was about to get out of the car and he wanted to have sex with me. I told him no. He said he was claiming that I was seeing somebody else and that's why I didn't want to. From then that's when it started. As soon as I was about to get out of the car, he took off . . . . I was unable to get out of car. Just—as soon as I was attempting to get out of the car he just floored it, just pushed the gas and took off around the block. . . .
>
> I wanted to get out. He was driving very reckless and fast. I was scared. I didn't want to be in the car with him. I was going to—any chance that I got that he was going to slow down, I wanted to get out of the car. . . .
>
> So we go over the railroad tracks, we take a left. You go left and it curves but he makes a u-turn. He doesn't go all the way down the road. He makes a u-turn. I almost fell out of the car but he kind of pulls me back because my door was open. At that time he starts slowing down and he's trying to get my purse. . . .
>
> Um, at that point he tried—he slowed down and he's trying to get the purse and we're still arguing and I want to get out of the car and I'm yelling at the top of my lungs. My door is slightly open because I'm holding it with my feet. So he finally gets a hold of just the purse strap because it's still around my shoulder and he just starts pulling it towards him and that's when it was choking me. . . . I'm scared for my life. I'm trying to scream but I can't because I'm being choked, I can't breathe. . . .
>
> At that point, when I told him that I couldn't breathe he stopped, he let go and then he took off. Just drove again, pushed the pedal. . . .
>
> We're driving, he stops the car, he gets a hold of my purse . . . [f]rom behind me. From that point, when he has the car stopped I had my door open still from with my feet pushing it, so when he stops the car, I'm getting out of the car sitting with my feet out. He gets a hold of the purse—as soon as he gets a hold of the purse, he pushes me. I felt his hand, I end up on the floor. . . [o]utside the car. On the road. Half the road where my head is where the grass starts. I'm under the car. I could feel the heat of the car. I felt the back tire, the driver's side back tire around my feet and in a split second . . . [t]he tire went over my back.

Martinez stated that she was in "excruciating pain" and "couldn't really believe what happened."[1] She denied that the hydrocodone pills found in her purse belonged to her,

---

[1] Martinez stated that a female bystander came to her after the incident to ask if she was okay, but the trial court sustained defense counsel's hearsay objection to that testimony. Later, referring to the bystander, Martinez stated: "I was shocked, I didn't think the car had went over me. She assured me it

but she admitted having a "dependency" on hydrocodone for "about a year or two" several years ago when she was prescribed the medication for a broken hand and "busted head."

On cross-examination, when asked "how did you exit the vehicle," Martinez replied: "When he had stopped, after he had pulled my purse from behind me, he pushed me." She clarified that the car ran over her back and her feet. She conceded that she suffered no deep lacerations, broken bones, ruptured organs, internal bleeding, or severe bruising as a result of the incident. She also conceded that she was wearing glasses at the time of the incident but that the glasses were not damaged. Martinez denied that she and Ramos were arguing about the hydrocodone pills, and she denied that Ramos was actually trying to restrain her from jumping out of the car.

Three eyewitnesses testified that they observed a young woman in a white Ford Mustang, with the door open, screaming. They later saw the woman outside the car on the ground. They did not see the car strike anyone.

Ramos called two witnesses, his mother and sister-in-law, who each testified that Martinez had a hydrocodone problem. They did not see the incident in question. Ramos himself testified that he got into an argument with Martinez over the hydrocodone pills. He stated that "[s]he kept trying to exit the vehicle." When asked why he did not want Martinez to leave the car, Ramos stated:

> I felt if she would have gotten away and I would have dropped her off at her house, she would have abused her prescription pills and probably would've caused bodily harm to herself. She was really depressed coming from a— she had just recently had an abortion—not an abortion—it was a miscarriage and I believe that's what caused the root of everything. . . .
>
> I was trying to hold on with one hand and, you know, keep her from

---

did." However, defense counsel also objected to this statement on hearsay grounds and the trial court sustained the objection and struck the testimony from the record.

4

grabbing, from falling out of the car with the other hand.

Ramos denied pushing Martinez out of the car or running over her.

The jury convicted Ramos of aggravated assault and sentenced him to three years'
imprisonment. The trial court suspended the sentence and placed Ramos on community
supervision. Ramos was also ordered to pay $14,450 in restitution to Martinez.[2] This
appeal followed.

## II. DISCUSSION

### A.    Standard of Review and Applicable Law

In reviewing the sufficiency of evidence supporting a conviction, we consider the
evidence in the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt.
*Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323
S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443
U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly
resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports
conflicting inferences, we must presume that the trier of fact resolved any such conflicts
in favor of the prosecution, and we must defer to that resolution. *Padilla v. State,* 326
S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a
hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

---

[2] Ramos does not challenge the assessment of restitution on appeal.

5

1997).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Id.*  A hypothetically correct jury charge in this case would state that Ramos is guilty if he intentionally, knowingly, or recklessly caused bodily injury to Martinez by striking her with a vehicle.[3]  *See* TEX. PENAL CODE ANN. § 22.02.  "Bodily injury" means "physical pain, illness, or any impairment of physical condition."  *Id.* § 1.07(a)(8) (West, Westlaw through Ch. 46, 2015 C.S.).  A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result.  *Id.* § 6.03(a) (West, Westlaw through Ch. 46, 2015 R.S.).  A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  *Id.* § 6.03(b).  A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur.  *Id.* § 6.03(c).  The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.  *Id.*

## B.  Analysis

In arguing that the evidence was insufficient to support his conviction, Ramos makes the following points on appeal:  (1) Martinez testified that Ramos ran over her with

---

[3] Ramos does not dispute that a vehicle is a deadly weapon as defined by statute.  *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (West, Westlaw through Ch. 46, 2015 R.S.) ("'Deadly weapon' means:  (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury;  or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.").

his car but she suffered no broken bones or other serious injuries; (2) other than Martinez, no one saw the car run over her; (3) no one saw Ramos attempt to run her over; (4) there was evidence that Ramos was trying to prevent Martinez from throwing herself out of the car; (5) Martinez admitted being dependent on hydrocodone in the past; (6) hydrocodone was found in Martinez's purse on the day of the incident; (7) a photograph of Martinez entered into evidence shows that she "consumed substances which had an intoxicating effect precipitating excessive emotional emoting during this incident"; (9) Martinez's two miscarriages "may have exacerbated [her] hysterical conduct"; (10) Martinez's "history of argumentation and debate with [Ramos]" showed that she "could direct abusive outburst against [Ramos] due to the demands of her addiction"; (11) Martinez's testimony was "incredulous" and there "was sufficient evidence before [the jury] that such an event never happened."

Even assuming the truth of these statements,[4] we nevertheless find the evidence sufficient to support the essential elements of the offense. Martinez testified that, shortly after arguing with Ramos about her phone, Ramos "pushed" her out of the car and she then "felt the back tire, the driver's side back tire around my feet and in a split second . . . [t]he tire went over my back." She stated the incident left her in "excruciating pain." Ramos testified that the argument was about hydrocodone and that, instead of pushing Martinez out of the car, he was trying to prevent her from exiting the car. However, the jury is the sole judge of the credibility of witnesses and the weight to be given the testimony, and it may choose to believe some testimony and disbelieve other

---

[4] We do not share Ramos's opinion that the photograph of Martinez entered into evidence shows that she was intoxicated. There was no testimony indicating that Martinez was intoxicated at the time of the incident. We note that, to the extent Martinez appeared disoriented and flushed in the photograph, that may have been because she was recently run over by a car.

7

testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Therefore, Martinez's testimony alone was sufficient to establish that Ramos intentionally, knowingly, or recklessly caused her bodily injury by striking her with a vehicle. *See* TEX. PENAL CODE ANN. § 22.02. Even if we were to agree with Ramos that Martinez's testimony was unreliable, we may not act as a "thirteenth juror" by substituting our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 905.

Because the evidence was sufficient to support the verdict, we overrule Ramos's sole issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.